**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| KIMBERLY DEROSSETT, Individually and on behalf of all others similarly situated<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PATROWICZ HOLDINGS, LLC D/B/A JONATHON C. PATROWICZ D.O., P.A., and SIGNATUREMD, INC.,<br><br>　　　　　Defendants. | CLASS ACTION<br><br>Case No. 1:21-cv-01294-DKC<br><br>HEARING REQUESTED |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN
<u>SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**[1]

---

[1] To avoid violation of the one-way intervention rule, Plaintiff respectfully requests for this Court to enter an order on Plaintiff's Motion for Class Certification before ruling on Plaintiff's Cross-Motion for Summary Judgment. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)) ("'One-way intervention' occurs when the potential members of a class action are allowed to 'await . . . final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests.'").

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION…………………………………………………………....…1

II.  UNDISPUTED MATERIAL FACTS……………………………….…………3

  A. Patrowicz Decides to Transition to a Fee-Based Concierge Practice………..……….....3

  B. Defendants' Multi-Channel Campaign Regarding the Transition…………...………..4

  C. The Purpose of Defendants' Campaign was to Market Concierge Services….………..5

  D. Defendants' Prerecorded Marketing Messages……………………….…...……………8

  E. Defendants Failed to Secure Express Written Consent………………………...……10

III.  LEGAL STANDARD………………………………………………….………11

IV.  ARGUMENT………………………………………………………….………12

  A. This Court Should Deny Defendants' Motion for Summary Judgment……………….12

    1. Defendants' Purported Compliance With HIPAA is Irrelevant…………..……12

    2. The Healthcare Exception Does not Apply………………………..……………14

    3. The Emergency Purpose Exception Does Not Apply…………………………17

    4. Whether Plaintiff Provided Express Consent is not Relevant, and Even if it Were, Plaintiff did not Provide SignatureMD With Consent………………..20

  B. This Court Should Grant Plaintiff's Cross-Motion for Summary Judgment……..……21

    1. Defendants Initiated Prerecorded Voice Calls to Plaintiff and the Class Members……………………………………………………..………….22

    2. Defendants' Calls Constitute Telemarketing…………………………..23

    3. Defendants Failed to Secure Express Written Consent……..………………29

    4. SignatureMD Failed to Secure any Type of Consent……………………….…31

    5. No Exception Applies to Defendants' Calls………………………...……31

    6. Defendants' Violations Were Knowing and Willful…………………….....32

V.     CONCLUSION……………………………………………………………...…….33

## **TABLE OF AUTHORITIES**

**Cases**

*ACA Int'l v. FCC*,
　　885 F.3d 687 (2018)…………………………………………..…………………13, 18

*Alleman v. Yellowbook, Inc.*,
　　2013 U.S. Dist. LEXIS 127212 (S.D. Ill. Sept. 6, 2013)……………………...………..26

*Bellows v. Darby Landscaping*,
　　2016 U.S. Dist. LEXIS 7416 (D. Md. Jan. 21, 2016)………………………………...12

*Chesbro v. Best Buy Stores, LP*,
　　705 F.3d 913 (9th Cir. 2012)……………………………………………….……...24, 25, 26

*Chinitz v. NRT West, Inc*,
　　2019 U.S. Dist. LEXIS 27134 (N.D. Cal. Feb. 20, 2019)…………………………...25, 26

*Corrado v. Life Inv'rs Owners Participation Tr. & Plan*,
　　2011 U.S. Dist. LEXIS 25247 (D. Md. Mar. 11, 2011)…………………………….……11

*Couser v. Pre-paid Legal Services, Inc.*,
　　994 F.Supp.2d 1100 (S.D. Cal. 2014)……………………………………………………22

*Cunney v. Patrick Communs.*, LLC,
　　191 F. Supp. 3d 480 (D. Md. 2016)……………………………………………….……11

*Dennis v. Amerigroup Wash., Inc.*
　　2020 U.S. Dist. LEXIS 22832 (W.D. Wash. Feb. 10, 2020)…………………………19, 20

*Dorfman v. Albertsons*,
　　2019 U.S. Dist. LEXIS 199955 (D. Idaho Feb. 12, 2019)………………………...……14

*Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*,
　　106 F. Supp. 3d 9 (D.D.C. 2015)……………………………………………………23

*Fiorarancio v. WellCare Health Plans, Inc.*,
　　2022 U.S. Dist. LEXIS 5297 (D.N.J. Jan. 11, 2022)………………………...……14, 23, 24

*Flood v. Univ. of Md. Med. Sys. Corp.*,
　　2014 U.S. Dist. LEXIS 176532 (D. Md. Dec. 23, 2014)………………………………12

*Flores v. Access Ins. Co.*,
　　2017 U.S. Dist. LEXIS 36486 (C.D. Cal. Mar. 13, 2017)………………………...………27

*Golan v. Veritas Entm't, LLC*,
  788 F.3d 814 (8th Cir. 2015)………………………………………...……23, 26, 27

*havePower, LLC v. Gen. Elec. Co.*,
  256 F. Supp. 2d 402 (D.Md. 2003)……………………………………………11

*Keim v. ADF MidAtlantic, Ltd. Liab. Co.*,
  328 F.R.D. 668 (S.D. Fla. 2018)………………………………………...……29

*Krakauer v. Dish Network, LLC*,
  925 F.3d 643 (4th Cir. 2019)………………………………….………..1, 32

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  944 F. Supp. 2d 1226 (S.D. Fla. 2013)…………………………………...……12

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014)………………………………….………..13

*Meyer v. Bebe Stores, Inc.*,
  2015 U.S. Dist. LEXIS 12060, at *3 (N.D. Cal. Feb. 2, 2015)……………………………27

*Nat'l Enters., Inc. v. Barnes*,
  201 F.3d 331 (4th Cir. 2000)………………………………………...……12

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*,
  950 F.3d 959 (7th Cir. 2020)………………………………….……20, 31

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
  2015 U.S. Dist. LEXIS 22108 (W.D. Wash. Feb. 24, 2015)……………………………...22

*Roberts v. Medco Health  Solutions, Inc.*,
  2016 U.S. Dist. LEXIS 97177 (E.D. Mo. July 26, 2016)…………………………18

*Rossignol v. Voorhaar*,
  316 F.3d 516 (4th Cir. 2003)………………………………….………..11

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007)………………………………………………32

*Sandoe v. Bos. Sci. Corp.*,
  2020 U.S. Dist. LEXIS 2800 (D. Mass. Jan. 8, 2020)…………………………16

*Schaevitz v. Braman Hyundai, Inc.*,
  437 F. Supp. 3d 1237 (S.D. Fla. 2019)………………………………………32

*Singletary v. Allstate Ins. Co.*,

2013 U.S. Dist. LEXIS 165736 (D.S.C. Nov. 21, 2013)……………………………....…..12

*Snyder v. Icard Gift Card, LLC*,
2016 U.S. Dist. LEXIS 191212 (S.D. Fla. May 16, 2016)……………….…………30

*Smith v. Rite Aid Corp.*,
2018 U.S. Dist. LEXIS 190757 (W.D.N.Y. Nov. 7, 2018)……………..……..13, 18, 19, 20

*Toney v. Quality Res., Inc.*,
75 F. Supp. 3d 727 (N.D. Ill. 2014)…………………………………………………28

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017)……………………………………………………29

*Williams v. Lazer Spot, Inc.*,
2014 U.S. Dist. LEXIS 149308 (D. Md. Oct. 21, 2014)…………………….………12

*Zani v. Rite Aid Hdqtrs. Corp.*,
725 F. App'x 41 (2d Cir. 2018)…………………………………………..……14

**Statutes**
47 U.S.C. § 227..................................................................................... 1, 21

**Rules**
Fed. R. Civ. P. 56.................................................................................... 1, 11

**Regulations**
47 C.F.R. § 64.1200 ............................................................................. passim

**FCC Orders**
*In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 Junk Prevention Act of 2005*,
21 FCC Rcd. 3787, 3814 (2006)……………………………………………...…..23

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
18 FCC Rcd. 14014 (2003)…………………………………………...…………..24

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
27 FCC Rcd. 1830 (2012)………………………………….….……………….21

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
27 FCC Rcd. 15391 (Nov. 29, 2012)……………………………………………24

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
30 FCC Rcd. 7961 (2015)……………………………………………..…14, 15, 30, 32

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
31 F.C.C. Rcd. 9054 (2016)…………………………………………………………..17, 32

**EXHIBIT LIST**

| Exhibit No. | Description | Previously Filed At |
|:---:|:---|:---:|
| 1 | Deposition Transcript of Defendants' First 30(b)(6) Designee, Dr. Jonathan Patrowicz ("**Patrowicz Dep.**"), including the following exhibits to the transcript:<br><br>• Ex. 5 at PTRWCZ00000077<br><br>• Ex. 6 SIGNATUREMD00000013 (message recording)<br><br>• Ex. 7 at PTRWCZ0000079<br><br>• Ex. 8 (message recording)<br><br>• Ex. 11 at PTRWCZ0000004 | [DE 38-2] |
| 2 | Deposition Transcript of Defendants' Second 30(b)(6) Designee, Julie Robinson ("**Robinson Dep.**") | [DE 38-3] |
| 3 | Deposition Transcript of Jodi Rios-Towns ("**Towns Dep.**"), including the following exhibits to the transcript:<br><br>• Ex. 1 at CYPRESS0000029-30<br><br>• Ex. 2 at CYPRESS0000003<br><br>• Ex. 7 at PTRWCZ00000062-63 | [DE 38-4] |
| 4 | Deposition Transcript of Plaintiff Kimberly Derossett ("**Pltf. Dep.**") | [DE 41-3] |
| 5 | First Amended Joint Stipulation Regarding Call Records in Defendant's Possession | [DE 22] |
| 6 | First Amended Complaint | [DE 26] |

Plaintiff Kimberly Derossett, on behalf of herself and all others similarly situated (the "Class members"), and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully requests for this Court to (1) deny Defendants Jonathan C. Patrowicz D.O., P.A.'s ("Patrowicz") and Signature MD, Inc.'s ("SignatureMD") (collectively "Defendants") Motion for Summary Judgment (the "Motion"), [DE 32], and (2) grant summary judgment in favor of Plaintiff and the Class members with respect to their claims under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA").

## I.    INTRODUCTION

"Telemarketing calls are [] intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records." *Krakauer v. Dish Network, LLC,* 925 F.3d 643, 649 (4th Cir. 2019). "Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991." *Id.* "To meet these ends, the TCPA first impose[s] a number of restrictions on the use of automated telephone equipment, such as 'robocalls.'" *Id.* (citing 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (2012)). "The TCPA can be enforced by federal agencies, state attorneys general, and private citizens." *Krakauer,* 925 F.3d at 649. The "private cause of action is a straightforward provision designed to achieve a straightforward result….Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 650.

This case involves Defendants' violations of Plaintiff's and the Class members privacy rights under the TCPA to be free of intrusive telemarketing calls. More specifically, to promote their concierge medical services, Defendants launched a marketing campaign that included the

1

prerecorded message calls at issue and which was designed "**to encourage sales without sounding too 'salesy'**." Towns Dep., Ex. 2 at CYPRESS0000003 (emphasis supplied). Defendants needed to sell their memberships because, as described by SignatureMD's Executive Vice President, doctors like Patrowicz "**don't want to necessarily take a huge pay cut**[]" when transitioning to a concierge model and "[a]t a certain level, **you need a certain number of members to essentially break even or to have a similar lifestyle, you know, financially**." Robinson Dep. at 53:24 – 54:8 (emphasis supplied).

Faced with being held accountable for violating the privacy rights of thousands of individuals, Defendants now claim that their marketing efforts were really meant to "educate" and "inform" Plaintiff and the Class members so that they would have an opportunity to enroll in the concierge practice or find a new doctor. This is a narrative that Defendants concocted to avoid millions in statutory damages. Defendants had no concern other than to enroll the necessary number of patients so SignatureMD could make a profit and Patrowicz could maintain his lifestyle while working less. In fact, internal communications between Defendants show that they actively sought to discourage Plaintiff and the Class members from switching their care over to Patrowicz's nurse practitioner partner who was not transitioning her practice to a concierge model. *See* Towns Dep., Ex. 2 at CYPRESS0000003 (discussing how the letter and e-mail sent to Plaintiff and the Class members were drafted to "incorporate[] the urgency to sign up with [Patrowicz] rather than making it an option to move to [the nurse practitioner]." Towns Dep., Ex. 2 at CYPRESS0000003. Moreover, Defendants waited until the last minute to provide any information to Plaintiff and the Class members regarding alternate available medical practices. *See* Robinson Dep. at 40:14 – 41:7; Towns Dep. at 37:7-17.

2

Defendant's mischaracterization of Plaintiff's testimony changes nothing. Plaintiff did admit at deposition that it is important for doctors to communicate with their patients, but she also testified that she believed Defendants' prerecorded calls to be "marketing, it's a nuisance" and that the calls were an attempt to "skirt the law" by Defendants. Pltf. Dep. at 111:18-21; 112:21-24. In sum, this case is about the all-too-common fact pattern of Defendants putting profits before the privacy rights of Plaintiff and the Class members. Defendants aggressively marketed their fee-based services utilizing various channels, including prerecorded voice calls. For all their discussion of regulatory frameworks and efforts to convince this Court that their calls are exempted, the facts of this case are simple: Defendants sent marketing prerecorded calls without the required express written consent. This Court should therefore deny Defendants' Motion for Summary Judgment, and grant Plaintiff's and the Class members' Cross-Motion for Summary Judgment.

## II.     UNDISPUTED MATERIAL FACTS

### A.   <u>Patrowicz Decides to Transition to a Fee-Based Concierge Practice</u>

Patrowicz operated a traditional medical practice for over 20 yrs. Patrowicz Dep. at 13:16.[2] Cypress Concierge Medicine, a company that is no longer in existence, assisted medical practices like Patrowicz's in transitioning to a concierge practice. Patrowicz Dep. at 13:11-19. Around October or November 2020, Patrowicz engaged Cypress Concierge to help it transition to a concierge practice. Patrowicz Dep. at 14:4-9. SignatureMD subsequently purchased Cypress Concierge Medicine at the end of March 2021. Robinson Dep. at 11:3-4. SignatureMD ultimately

---

[2] Per the Parties' stipulation, discovery and depositions that took place prior to the addition of SignatureMD as a Defendant is binding on both Defendants. *See* Joint Status Report, [DE No. 23], at pg. 2 ¶ h ("Defendant does not oppose the amendment and the parties have stipulated and agreed that all discovery conducted to date will be binding on both Defendants so as to avoid having to conduct additional discovery and disturb the current scheduling order.").

assisted Patrowicz in transitioning to a concierge practice in the beginning of April 2021. Robinson Dep. at 13:22 – 14:1; 15:8-12.

Concierge medicine is a subscription based medical practice model where patients pay an annual membership fee to be treated by the physician. Robinson Dep. at 12:15-22. Doctors will associate with SignatureMD to help them transition to a concierge model. Robinson Dep. at 13:5-9. ███████████████████████████████████████████████████████████████. Patrowicz Dep. at 83:21-25. ██████████████████████████████████████ ████████████████████████████████████████. Patrowicz Dep. at 17:3-6, 19:22-23; Robinson Dep. at 13:10-19. ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████. Patrowicz Dep. at 85:8-14. After the transition to a concierge model, Patrowicz only sees patients that pay the annual concierge fee. Patrowicz Dep. at 26:11-16.

As described by SignatureMD's Executive Vice President, ██████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Robinson Dep. at 53:24 – 54:8.

## B. Defendants' Multi-Channel Campaign Regarding the Transition

In around March 2021, Defendants developed a multi-channel marketing campaign regarding Patrowicz's transition to a concierge model, which included sending to Patrowicz's

patients e-mails, letters, a webinar, and the prerecorded messages that form the basis of this lawsuit. Patrowicz Dep. at 19:24–20:6; 50:7-23; Robinson Dep. at 15:18-21. Patrowicz and SignatureMD worked collaboratively on the campaign. Patrowicz Dep. at 87:8-14. 

Robinson Dep. at 21:24–22:11; 22:13-18.

At that time, Patrowicz's practice had 3,000 patients and the goal was to enroll 300 patients for the concierge practice. Patrowicz Dep. at 20:18-20. Patrowicz Dep. at 60:9-10.

Patrowicz Dep. at 79:2-9.

### C. **The Purpose of Defendants' Campaign was to Market Concierge Services**

Jodi Rios-Towns, a SignatureMD employee, was the transition manager and main point of contact for Patrowicz. Robinson Dep. at 17:7-13.  Her job at SignatureMD is to facilitate the transition from a general practice to a concierge medical practice, including contacting patients about the transition. Towns Dep. at 13:12-23.



Robinson Dep. at 48:22 – 49:1. An affiliation letter is the first letter sent to patients of an existing practice regarding the transition to a concierge model. Robinson Dep. at 47:23 – 48:7.

Towns Dep. at 27:22 – 28:10; 29:16 – 30:1.

Robinson Dep. at 57:5-9.

The affiliation letter stated in part:



Towns Dep., Ex. 1 at CYPRESS0000029-30. The "Tanya" referenced in Towns's email, is a nurse

practitioner with Patrowicz's practice. Robinson Dep. at 51:23-24.

Towns Dep., Ex. 2 at CYPRESS0000003.

In the e-mail attaching the draft affiliation letter, Towns explained:

Town Dep., Ex. 2 at CYPRESS0000003.

(emphasis original), █████████████████████████████████████████████ *id.*
(emphasis supplied), ████████████████████████████████████████████
██████████████████████. Towns Dep. at 34:11-19. Ultimately, however, Towns conceded that there was a sale component to the communications: "So if they chose to stay with Dr. Patrowicz, they would be signing up. And upon that sign up, yes, there would be payment for those services. So, essentially, ***at that point in time, it would be a sale***. But a sign up first." Towns Dep. at 35:20-25 (emphasis supplied). At deposition, Patrowicz testified that he defines "sales" as "selling of the product." Patrowicz Dep. at 93:3-8. He also claimed that he did not recall ever discussing that the purpose of the e-mails was to encourage sales. Patrowicz Dep. at 94:19-25.



Robinson Dep. at 40:5-7.

Robinson Dep. at 40:14 – 41:7; Towns Dep. at 37:7-17.

Towns Dep. at 53:21 – 54:3, Ex. 7.

### D.  Defendants' Prerecorded Marketing Messages



██████████████████████. Patrowicz Dep. at 21:15-19; 23:11-14; 32:14-19; 41:10-17.

██████████████████████. Towns Dep. at 41:7-16; 51:17-20.

Patrowicz Dep. at 36:13-23.

██████████████████████. Patrowicz Dep. at 44:11-25; 47-3-6.

███████████████████ Patrowicz Dep., Ex. 7 at PTRWCZ0000079.

██████████████. Patrowicz Dep. at 45:3-10. Specifically, on April 22, 2021, Defendants transmitted or caused to be transmitted 3,181 prerecorded voice calls to as many of Patrowicz's patients. *See* First Amended Joint Stipulation Regarding Call Records in Defendant's Possession, [DE 22], at ¶1. On May 5, 2021, Defendants transmitted or caused to be transmitted 2,734 prerecorded voice calls to Patrowicz's patients to numbers/persons within the same group of 3,181 calls on April 22, 2021. *Id*. Patrowicz maintains personal identifying information with respect to the individuals that were called with prerecorded voice calls, including, but not limited to, the person's name and last known address for billing purposes, and in many (but not necessarily all) instances, email addresses. *Id*. at ¶2.  Plaintiff was sent and received a prerecorded messages recorded by Patrowicz. Patrowicz Dep. at 88:8-9, 90:7-11.

The April 22nd prerecorded message stated:

> Hello, this is Dr. Jonathan Patrowicz calling by voice recording. I'm calling to make sure you received the letter I sent a couple of weeks ago regarding my new personalized healthcare program.
>
> Because many of you have questions regarding the changes, and in an effort to help you make fully informed decisions, I am hosting a live, informational webinar next Wednesday, April 28th at 6pm via Zoom. I sincerely hope that you will be able to join me.
>
> If you would like to attend, you can register by pressing 1 at the end of this message. If you cannot attend, I encourage you to reach out to my patient liaison, Kelli Carpenter, at 410-334-3540 or KCarpenter@YourCypress.com. Once again, Kelli's number is 410-334-3540. She can answer questions or get you signed up over the phone.
>
> The first few weeks of enrollment have exceeded all my expectations and membership is filling up quickly, so please don't miss the opportunity to find out more. Thank you and have a great evening.

Patrowicz Dep., Ex. 5 at PTRWCZ00000077; Ex. 6 at SIGNATUREMD00000013 (recording).

The May 5th message stated:

> Hello, this is Dr. Jonathan Patrowicz calling by voice recording. I wanted to extend my thanks to all of you who participated in the webinar about our new personalized medical practice this past Wednesday evening. I'm so pleased at the large number of patients who have elected to stay with our practice as members.
>
> At this point, the practice is about two-thirds full in just over four weeks since we made the initial announcement. If you are still undecided or need additional information, please don't hesitate to reach to my patient liaison, Kelli Carpenter at 410-334-3540 or KCarpenter@YourCypress.com.
>
> Again, spots for memberships are filling quickly, so if you have any questions or would like to sign up, please call Kelli Carpenter at 410-334-3540 today.
>
> Your loyalty is greatly appreciated and I hope to continue our partnership as we start this now journey together.

Patrowicz Dep. at 90:14-24; 91:2-18, Ex. 8 (recording); First Amended Complaint at ¶35.



Robinson Dep. at 26:4-25.



Robinson Dep. at 29:10-21.

Plaintiff understood Defendants' prerecorded calls to be "marketing, it's a nuisance" and that the calls were an attempt to "skirt the law" by Defendants. Pltf. Dep. at 111:18-21; 112:21-24.

**E.  Defendants Failed to Secure Express Written Consent**

Defendants failed to secure the requisite consent needed under the TCPA to place telemarketing calls utilizing prerecorded messages. Plaintiff and the Class members were never required to sign any type of form authorizing the transmission of prerecorded marketing communications to their telephones. Patrowicz Dep. at 69:19-24; 70:1-8.

. Patrowicz Dep. at 73:5-17.

*See* Patrowicz Dep., Ex. 11 at PTRWCZ0000004 (emphasis added).

Notwithstanding, Patrowicz maintains that it was permitted to send the messages because those patients had completed an intake form and provided their number. Patrowicz Dep. at 60:23 – 61:6.

████████████████████████████████████████████████████████████████

████████████████████████████████████. Patrowicz Dep. at 60:2-6. And SignatureMD did not secure Plaintiff's or the Class members' telephones number directly from them; Patrowicz provided the numbers to SignatureMD as discussed above. Patrowicz Dep. at 58:2-10

## III.    LEGAL STANDARD

"When faced with cross-motions for summary judgment, as in this case, the court must consider 'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Corrado v. Life Inv'rs Owners Participation Tr. & Plan*, Civil Action No. DKC 08-0015, 2011 U.S. Dist. LEXIS 25247, at *15 (D. Md. Mar. 11, 2011) (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003), *cert. denied*, 540 U.S. 822 (2003) (internal quotation marks omitted); citing *havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D.Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3d ed. 1983))). "The court must deny both motions if it finds there is a genuine issue of material fact, '[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Corrado*, 2011 U.S. Dist. LEXIS 25247, at *15 (quoting 10A Federal Practice & Procedure § 2720).

Additionally, while Fed. R. Civ. P. 56 permits the use of declarations to support motions for summary judgment, the use of unsupported self-serving declarations – as Defendant here has done through the declaration of Patrowicz – "are disfavored as mechanisms for defeating a summary-judgment motion." *Cunney v. Patrick Communs.*, LLC, 191 F. Supp. 3d 480, n. 29 (D.

11

Md. 2016) (citing *Williams v. Lazer Spot, Inc.*, Civ. No. BPG-13-1850, 2014 U.S. Dist. LEXIS

149308, 2014 WL 5365581, at *3 (D. Md. Oct. 21, 2014) ("Without further evidence, self-serving

testimony is insufficient to defeat summary judgment."); *Singletary v. Allstate Ins. Co.*, No. 2:12-

cv-940-RMG, 2013 U.S. Dist. LEXIS 165736, 2013 WL 6145277, at *6 (D.S.C. Nov. 21,

2013) ("A self-serving affidavit, without more, is not sufficient to defeat summary judgment.");

*Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000); *Bellows v. Darby Landscaping*,

Civ. No. WDQ-15-885, 2016 U.S. Dist. LEXIS 7416, 2016 WL 264914, at *5 (D. Md. Jan. 21,

2016); *Flood v. Univ. of Md. Med. Sys. Corp.*, Civ. No. GLR-12-2100, 2014 U.S. Dist. LEXIS

176532, 2014 WL 7363237, at *6 n.3 (D. Md. Dec. 23, 2014)).

## IV.   ARGUMENT

### A.   This Court Should Deny Defendants' Motion for Summary Judgment.

#### 1.   *Defendants' Purported Compliance With HIPAA is Irrelevant.*

Defendants' Motion contains approximately eight pages of discussion regarding HIPAA

that has no relevance to the claims or defenses in this case, and which this Court should disregard.

In *Mais v. Gulf Coast Collection Bureau, Inc.*, the court rejected a similar attempt by a defendant

to conflate the issues:

> The issue in this case is whether Defendants complied with the
> TCPA, the only statute under which Plaintiff has sued. Even if
> Defendants fully complied with HIPPA and had consent to use and
> disclose his cell phone number for payment purposes, it does not
> follow that they automatically, and without more, had "prior express
> consent" to call that number for debt collection purposes under
> the TCPA. The TCPA is a separate statute that imposes separate
> requirements. If Defendants had consent to use and disclose
> Plaintiff's phone number under HIPPA, then they were free to use
> and disclose it in any manner that does not violate the TCPA. For
> example, they could call his cell phone without using an automatic
> telephone dialing system or artificial prerecorded voice in order to
> collect the debt. But they were not free to just ignore the TCPA's
> separate strictures merely because they had consent under HIPPA.

944 F. Supp. 2d 1226, 1234 (S.D. Fla. 2013); *aff'd in part Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1125 (11th Cir. 2014) ("We agree with the district court that HIPAA compliance does not automatically ensure that a defendant falls within the prior express consent exception to the TCPA. ***The two statutes provide separate protections, and satisfaction of the first does not trigger compliance with the second***. Nor has the FCC issued an order ruling that satisfaction of HIPAA amounts to prior express consent to make autodialed or prerecorded debt collection calls to a cell-phone number.") (emphasis supplied); *ACA Int'l v. FCC*, 885 F.3d 687, 712 (2018) ("***There is no obstacle to complying with both the TCPA and HIPAA***[.]") (emphasis supplied).

Defendants claim that the prerecorded calls they placed to Plaintiff and the Class members are not only permitted, but required under HIPAA and therefore did not violate the TCPA. *See* Mot. at 9, 19. If Defendants were correct, "healthcare providers could use ATDS equipment to bombard nonconsenting wireless users with calls and texts…without incurring TCPA liability. Nothing in HIPAA commands such a result, and we see no basis to interpret it to frustrate the TCPA in that way." *ACA Int'l*, 885 F.3d at 712. Contrary to Defendant's contention, compliance with HIPAA does not absolve Defendants of liability under the TCPA and that argument has been rejected by the Eleventh Circuit, the U.S. Court of Appeals for the D.C. Circuit, and at least one district court. In other words, Defendants' "arguments misunderstand the relevant statutory terrain, and [this Court should] reject them." *ACA Int'l*, 885 F.3d at 711.

Additionally, Defendant's reliance on the FCC's 2012 Ruling, Mot. at 19, ignores that the FCC subsequently clarified that for a prerecorded call to fall within the healthcare exception, the message "must not include any telemarketing, solicitation, or advertising" and must "have a healthcare treatment purpose, specifically: appointment and exam confirmations and reminders,

wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 2015 FCC LEXIS 1586, at ¶¶ 146-147 (F.C.C., July 10, 2015) (the "2015 Order").

Here, the calls were not about an appointment or exam reminder, a wellness checkup, pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up, prescription notifications, or home healthcare instructions. They were generic marketing calls about Defendants' concierge services unrelated to the personal healthcare of Plaintiff or any Class member. And so, as discussed in more detail below, Defendants are not afforded any exception from the express written consent requirement.

### 2.      *The Healthcare Exception Does not Apply.*

Contrary to Defendants' arguments, the healthcare exception does not serve as a blanket exception for all communications simply because they are sent by a healthcare provider.  *See Dorfman v. Albertsons*, No. 1:18-cv-00094-EJL, 2019 U.S. Dist. LEXIS 199955, at *7 (D. Idaho Feb. 12, 2019) ("Calls whose 'intent and purpose concern consumers' health, not the purchase of a good or service,' and whose content is subject to HIPAA, are not advertisements under the TCPA….This does not mean that healthcare-related calls, as a matter of law, are *not* solicitations under the TCPA.") (citing *Zani v. Rite Aid Hdqtrs. Corp.*, 725 F. App'x 41, 44 (2d Cir. 2018) ("There may well be messages that, though purportedly delivering a health care message, are so laden with marketing material as to raise a factual issue as to whether they fall outside the health care exemption.")) (emphasis in original); *Fiorarancio v. WellCare Health Plans, Inc.*, Civil Action No. 21-14614 (SRC), 2022 U.S. Dist. LEXIS 5297, at *23 (D.N.J. Jan. 11, 2022) ("Thus,

if the FCC wanted to exempt all health care messages from the requirements of the Prerecorded Message Prohibition, it presumably also would have codified that exemption with these other wholesale exemptions.").

Moreover, the FCC's rules and implementing regulations require, in pertinent part, the following elements to be satisfied for a call to fall within the healthcare exception:

*        *        *

(C) Voice calls and text messages are strictly limited to those for the following purposes: appointment and exam confirmations and reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions;

(D) Voice calls and text messages must not include any telemarketing, solicitation, or advertising; may not include accounting, billing, debt-collection, or other financial content; and must comply with HIPAA privacy rules, 45 CFR 160.103;

*        *        *

(G) A healthcare provider must offer recipients within each message an easy means to opt out of future such messages; voice calls that could be answered by a live person must include an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the call recipient to make an opt-out request prior to terminating the call; voice calls that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt out of future healthcare calls; text messages must inform recipients of the ability to opt out by replying "STOP," which will be the exclusive means by which consumers may opt out of such messages; and,

(H) A healthcare provider must honor opt-out requests immediately.

47 C.F.R. § 64.1200(a)(9)(iv); *see also* 2015 Order at ¶147.

Failure to comply with every requirement set out by the FCC for these types of messages renders the exception inapplicable. *See Smith v. Rite Aid Corp.*, No. 17-CV-6044 CJS, 2018 U.S. Dist. LEXIS 190757 (W.D.N.Y. Nov. 7, 2018) ("Rite Aid clearly has not made such a showing with regard to the 'exigent healthcare' message exception, since the Complaint indicates that the

calls made to Plaintiff do not meet the criteria established by the FCC. As just one example, the FCC permits a caller to make only one exigent healthcare call per day, 'up to a maximum of three voice calls . . . per week from a specific healthcare provider,' and the Complaint alleges that Plaintiff received such calls from Rite Aid 'often multiple times in a single day.' Accordingly, Rite Aid's motion is denied insofar as it is based on the exigent healthcare call exception.").

Here, as evidenced by the content of the messages quoted above, Defendants' prerecorded calls failed to comply with the FCC's requirements in the following ways: (1) the calls were not strictly limited to appointment and exam reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up, prescription notifications, or home healthcare instructions; (2) the calls included telemarketing, solicitation, and advertising regarding Defendants' concierge services; and (3) the calls had no opt-out mechanism or method for Plaintiff and the Class members to request for the calls to stop. Accordingly, the healthcare exception is inapplicable and does not absolve Defendants of liability for their TCPA violations.

Lastly, Defendants' reliance on *Sandoe v. Bos. Sci. Corp.*, is misplaced. In that case, the defendant did not "sell its products at the Seminars" that were marketed in the calls. Civil Action No. 18-11826-NMG, 2020 U.S. Dist. LEXIS 2800, at *3 (D. Mass. Jan. 8, 2020). Instead, the "purpose of each call was to invite the intended recipient to a Seminar for pain management at which Boston Scientific products were sometimes mentioned but were not for sale." *Id*. at *14. Unlike in *Sandoe*, the ultimate purpose of Defendants' calls was to sell Plaintiff and the Class members memberships for which they would have been charged an annual fee of $1,800 to $2,400 by Defendants. *See* Patrowicz Dep. at 83:21-25; Towns Dep. at 34:11 – 35:25 ("And upon that sign up, yes, there would be payment for those services. So, essentially, at that point in time, it

16

would be a sale. But a sign up first.").  Indeed, it is undisputed that Defendants were attempting to solicit the sale of their services through a multi-channel marketing campaign that was developed "to encourage sales without sounding too 'salesy'." Town Dep., Ex. 2 at CYPRESS0000003.



, Towns Dep., Ex. 1 at CYPRESS0000029-30; Towns Dep., Ex. 2 at CYPRESS0000003; Robinson Dep. at 51:23-24, ███████████████████████ , Robinson Dep. at 40:14 – 41:7; Towns Dep. at 37:7-17.

The reason for these aggressive marketing strategies? ████████████████ ████████████████████████ Robinson Dep. at 53:24 – 54:8. ████████████████████████ . Patrowicz Dep. at 85:8-14. ██ ████████████████████████ . Patrowicz Dep. at 79:2-9.

Plaintiff, for her part, understood Defendants' prerecorded calls to be "marketing, it's a nuisance" and that the calls were an attempt to "skirt the law" by Defendants. Pltf. Dep. at 111:18-21; 112:21-24. Accordingly, Defendants fail to persuade as they – unlike the defendant in *Sandoe* – were attempting, and succeeded, in selling a service.

### 3. *The Emergency Purpose Exception Does not Apply.*

In 2016, the FCC clarified that "purported emergency calls cannot be targeted to just any person. These calls must be about a bona fide emergency that is relevant to the called party."  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C.

Rcd. 9054, 9062 (2016) ("2016 Order"); *see also* 47 C.F.R. 64.1200(f)(4). In *ACA Int'l*, the D.C. Circuit warned that the emergency exception must be narrowly interpreted because of the very real threat that "[c]onsumers may find themselves wholly unable to stave off calls satisfying the exception."   885 F.3d at 714.   Accordingly, generic prerecorded calls about the commercial availability of a service that are not targeted to a specific individual – like Defendants' solicitations here – do not fall within the emergency purpose exception because they are not about a bona fide emergency that is specifically relevant to the called the party.   Notwithstanding this unambiguous rule, Defendants contend that any communication remotely related to healthcare falls within the exception because it concerns the health and safety of consumers. Defendants are mistaken, as demonstrated by the very cases they cite.

For example, in *Roberts v. Medco Health Solutions, Inc.*, the court entered summary judgment in favor of the defendant because the calls at issue "involve[ed] an attempt to confirm or refill a prescription order, schedule a prescription delivery, or confirm that a prescription is on its way," and thus were covered by the emergency purpose exception.   No. 4:15 CV 1368 CDP, 2016 U.S. Dist. LEXIS 97177, at *8 (E.D. Mo. July 26, 2016).   The court agreed with the defendant's argument that a consumer's ability to obtain "a prescribed medicine is critical in preventing a major health emergency."  *Id*.

In *Smith v. Rite Aid Corp.*, Rite Aid argued that <u>targeted</u> prescription notification calls generally "affect the health of consumers" and are therefore covered by the emergency purpose exception.   2018 U.S. Dist. LEXIS 190757, at *11.   Rite Aid, however, failed to support its argument by demonstrating that the calls at issue involved an actual emergency by, for example, demonstrating "that the intended recipient of the calls would suffer death or serious injury if she did not receive the prescription medication."  *Id*.   Thus, the court in that case denied Rite Aid's

18

motion to dismiss and declined to adopt a "rule, as a matter of law, that prescription notice calls are necessarily shielded from TCPA liability by the emergency purpose exception..." *Id*. at *11.

Similarly, in *Dennis v. Amerigroup Wash., Inc.,* the court denied the defendant's motion for summary judgment advanced under the emergency purpose exception in part because the defendant failed to submit evidence "that the intended recipient of the call to [plaintiff] actually had a serious need for medication…" No. 3:19-cv-05165-RBL, 2020 U.S. Dist. LEXIS 22832, at *18 (W.D. Wash. Feb. 10, 2020). Additionally, the court found "no indication of a pressing need that would make such a call 'necessary' to a recipient's health at any given time." *Id*. Lastly, the defendant in that case generally "emphasize[d] the vulnerability" of the call recipients, but the court rejected this argument noting that "there is no reason to believe that they all have emergent health needs requiring prompt attention." *Id*.

Here, Defendants did not send targeted prescription notification reminders. Defendants sent generic prerecorded message blasts to Plaintiff and the Class members about their concierge services. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████. Towns Dep. at 41:7-16; 51:17-20. And unlike some of the cases on which they rely, Defendants' calls (1) were not a reminder to confirm or refill a prescription order, schedule a prescription delivery, or confirm that a prescription is on its way; (2) were not necessary to protect the health or safety of Plaintiff, or any other recipient of the messages; and (3) did not contain or provide Plaintiff with vital or time sensitive health and safety information.

In sum, like the defendant in *Rite Aid Corp.*, Defendants here fail to support their argument by demonstrating that the calls at issue involved an actual emergency by, for example,

demonstrating "that the intended recipient of the calls would suffer death or serious injury if she did not receive the prescription medication."  2018 U.S. Dist. LEXIS 190757, at *11.  And like the defendant in *Dennis*, Defendants fail to submit evidence "that the intended recipient of the call to [plaintiff] actually had a serious need for medication…"  2020 U.S. Dist. LEXIS 22832, at *18. Put simply, Defendants fail to demonstrate any "pressing need" that would make their calls necessary to Plaintiff and the putative class members.  *See id*.

### 4. *Whether Plaintiff Provided Express Consent is not Relevant, and Even if it Were, Plaintiff did not Provide SignatureMD With Consent.*

As Defendants acknowledge, the TCPA and its implementing regulations require "express written consent" for calls that constitute telemarketing. Mot. at 17; 47 C.F.R. § 64.1200(f)(9). There is no dispute that Defendants failed to secure express written consent. Accordingly, if this Court finds that Defendants were engaged in telemarketing, then whether Plaintiff provided her telephone number to Patrowicz (i.e., express consent) is not relevant as Defendants themselves are forced to concede that express consent is not sufficient for telemarketing prerecorded calls.

If this Court concludes that Defendants were not engaged in telemarketing, it should nevertheless deny summary judgment as to SignatureMD. The reason is simple: Plaintiff never provide her number, and therefore never provided consent, to SignatureMD because the TCPA does not authorize one entity to "transfer or extend an individual's prior express permission to another entity." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 967 (7th Cir. 2020) ("Accordingly, even if Allscripts had received prior express permission or invitation to send the fax in question—and it did not—AMS could not rely on Allscripts' procurement of that permission. And because AMS admitted it never procured prior express permission or invitation from any of the fax recipients, we must conclude that the district court appropriately held it liable under the TCPA.").

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████. Patrowicz Dep. at 58:2-10. Plaintiff and the Class members therefore never provide SignatureMD with consent and Patrowicz was not permitted to transfer or extend any purported consent it may have secured to SignatureMD. This Court should therefore, at a minimum, deny SignatureMD's request for summary judgment as it did not have Plaintiff's consent to place any type of prerecorded calls to her telephone.

**B.** **This Court Should Grant Plaintiff's Cross-Motion for Summary Judgment**.

Pursuant to section 227(b) of the TCPA and its implementing regulations, Defendants were prohibited from initiating telemarketing prerecorded voice calls to Plaintiff's and the Class members telephones without their express written consent. *See* 47 U.S.C. §227(b)(1); 47 C.F.R. § 64.1200(a); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1838 ¶20 (Feb. 15, 2012).

Here, it is undisputed that: (1) Defendants initiated prerecorded voice calls to Plaintiff and the Class members; (2) Defendants' calls constitute telemarketing; (3) Defendants failed to obtain express written consent from Plaintiff and the Class members; (4) SignatureMD obtained no type of consent from Plaintiff and the Class members; (5) no exception applies to Defendants' calls; and (6) Defendants' violations were willful or knowing.

Therefore, summary judgment should be granted in favor of Plaintiff and the Class members, awarding them $500 per call placed by Defendants.  Further, because Defendants' violations were willful and/or knowing, this Court should treble the minimum statutory damages. Defendants' violations were particularly egregious. Defendants utilized private information

provided to Patrowicz in connection with medical care to market their concierge services. To deter similar violations by Defendants and others, this Court should award treble damages.

### 1.   *Defendants Initiated Prerecorded Voice Calls to Plaintiff and the Class Members.*

"The TCPA was intended to 'apply to the persons **initiating** the telephone call or sending the message[.]'" *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, 2015 U.S. Dist. LEXIS 22108, at *12 (W.D. Wash. Feb. 24, 2015) (*quoting Couser v. Pre-paid Legal Services, Inc.*, 994 F.Supp.2d 1100, 1104 (S.D. Cal. 2014) (emphasis in the original) (citing S.Rep. No. 102-178 (1991), 1991 WL 211220 at *9)). The undisputed facts here are that Defendants initiated prerecorded voice calls to Plaintiff and the Class members. Specifically, Defendants worked collaboratively on the campaign. Patrowicz Dep. at 87:8-14. Patrowicz utilized a script prepared by SignatureMD and recorded the messages. Patrowicz Dep. at 21:15-19; 23:11-14; 32:14-19; 41:10-17; 44:11-25; 47-3-6. Patrowicz sent to SignatureMD Plaintiff's and the Class members' telephones. Patrowicz Dep. at 36:13-23. And the process followed for all of the prerecorded calls was the same:

> Dr. Patrowicz is given a phone number to call, which is where he calls it and where he records his voice shot. The -- the Customer Direct or Voice Shot, both of them, are on an online system that we use. And you essentially go on to Customer Direct or go on to Voice Shot and you upload the list of names -- the list of phone numbers that are going to be called, and then assign the voice recording with the list of names and pick a time and a day. And those calls are sent out at that time on that day.

Robinson Dep. at 29:10-21.

Pursuant to this process, on April 22, 2021, Defendants initiated 3,181 prerecorded voice calls to Plaintiff and the Class members. *See* First Amended Joint Stipulation Regarding Call Records in Defendant's Possession, [DE 22], at ¶1. Then, on May 5, 2021, Defendants initiated an

additional 2,734 prerecorded voice calls to Patrowicz's patients to numbers/persons within the same group of 3,181 calls on April 22, 2021. *Id*. It is therefore undisputed that Defendants initiated a total of 5,915 prerecorded voice calls to Plaintiff and the Class members.

### 2. *Defendants' Calls Constitute Telemarketing*.

The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication, not simply the content of the message.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

As discussed at length above, the ultimate purpose of Defendants' calls was to sell concierge memberships for which Defendants charge a hefty annual fee. But even if this Court gives any weight to Defendants' argument that the calls were purportedly informational, the outcome would not change. That is because calls "that are purely informational on their face may still violate the TCPA because they could ultimately be used to advertise other products or services at cost." *Fiorarancio v. WellCare Health Plans, Inc.*, Civil Action No. 21-14614 (SRC), 2022 U.S. Dist. LEXIS 5297, at *8 (D.N.J. Jan. 11, 2022) (citing *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 12-13 (D.D.C. 2015) (explaining that messages that promote a free good or service "are often part of an overall marketing campaign") (quoting In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 Junk Prevention Act of 2005, 21 FCC Rcd. 3787, 3814 (2006))).

In *Fiorarancio*, the defendant sent various calls referencing its "Healthy Living Program," "educational health program," and "in home health assessment visit[.]" 2022 U.S. Dist. LEXIS

5297, at *2. The defendant – like Defendants here - argued that its calls were not subject to the TCPA because "'none of the calls mentioned or encouraged buying, renting, or investing in anything' but rather 'sought to provide information, either about health care or about benefits under the WellCare health insurance plan.'" *Id*. at *6. In rejecting this argument, the court agreed with the plaintiff that the calls "were a 'pretext' to a commercial transaction." *Id*.

The reasoning and holding of *Fiorarancio* are consistent with the FCC's 2003 guidance concerning "dual purpose" calls, which are calls that appear informational on their face "but are motivated in part by the desire to ultimately sell additional goods or services.  If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14098 ¶ 142 (July 3, 2003) (emphasis added).  In 2012, the FCC further clarified that "texts that encourage consumers to call or otherwise contact the sender in an attempt to market, including such texts that, while neutral on their face, lead to a marketing message if the consumer contacts the sender, are likely beyond the scope of the consumer's prior consent." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 27 FCC Rcd. 15391, at ¶ 12 (Nov. 29, 2012).

Consistent with this guidance, the Ninth Circuit held that, "the FCC has determined that so-called 'dual purpose' calls, those with both a customer service or informational component as well as a marketing component, are prohibited."  *Chesbro v. Best Buy Stores, LP*, 705 F.3d 913, 917 (9th Cir. 2012) (citing *2003 Report and Order* at 14097-98 ¶¶ 140-142).   Further, the Ninth Circuit explained that in applying the dual purpose rule, courts must focus "not on the caller's characterization of the call, but on the purpose of the message." *Id.* at 918. It elaborated that courts

24

should approach the analysis "with a measure of common sense," keeping in mind that "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context," and that "[a]ny additional information provided in the calls does not inoculate them." *Id*. The logic behind examining intent is sound: if the analysis relied solely on the face of the communication, companies could easily circumvent the TCPA's rules by using "informational" calls or ones purporting to offer a "free" service as a hook to then solicit business. This would effectively eviscerate the TCPA's express written consent requirement.

Courts evaluating calls that are ultimate meant to market have found them to be dual purpose calls for which express written consent is required. For example, in *Chesbro*, the defendant called the plaintiff with a prerecorded message to inform him that his "Best Buy Reward Zone" certificates were about to expire. 705 F.3d at 916. Subsequently, the defendant sent a second prerecorded messages to the plaintiff to notify him of changes to the rewards program and to encourage the plaintiff to "go to MyRewardZone.com for details and to update your membership." *Id*. at 916-17. In rejecting the defendant's argument that the calls were not telemarketing, the Ninth Circuit held:

> The robot-calls urged the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the RZP, and thanked him for "shopping at Best Buy." Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other use for the Reward Zone points. Thus, the calls encouraged the listener to make future purchases at Best Buy.

*Id*. at 918.

In *Chinitz v. NRT West, Inc*, the defendants used prerecorded messages that simply stated that there "was a bad connection and someone would call [the recipient] back." No. 18-cv-06100-NC, 2019 U.S. Dist. LEXIS 27134, at *6 (N.D. Cal. Feb. 20, 2019). Thereafter, defendant's

employee would follow up and attempt to sell their real estate brokerage services. *Id*. The defendant argued that the court should limit its dual-purpose analysis to just the content of the pre-recorded call itself. *Id* at *6-7. The court rejected this argument and stated that "[47 C.F.R. § 64.1200(a)(2)] makes clear that the TCPA reaches prerecorded messages that do not constitute advertisements or telemarketing themselves." *Id.* Thus, the initial pre-recorded call "'introduce[d]' the telemarketing call and is prohibited under the TCPA." *Id.* at *7.

Similarly, in *Golan v. Veritas Entm't, LLC*, the defendants engaged in a national telemarketing campaign to promote their movie, *Last Ounce of Courage*. 788 F.3d 814, 817 (8th Cir. 2015). They prepared two pre-recorded messages, one that was played if the recipient answered his/her phone, and another which was left as a voicemail if the phone was not answered. *Id*. The plaintiffs did not answer their phones and consequently received the following pre-recorded message on their voicemail: "Liberty. This is a public survey call. We may call back later." *Id*. at 816. In granting the defendant's motion to dismiss, the district court concluded that the messages received by the plaintiffs did not contain an advertisement and did not constitute telemarketing. *Id*. at 818. On appeal, the Eighth Circuit reversed, rejecting the defendants' argument that it should "consider only the content of the calls in determining whether they were 'telemarketing.'" *Id*. at 820 (citing *Alleman v. Yellowbook, Inc.*, No. 12-CV-1300-DRH-PMF, 2013 U.S. Dist. LEXIS 127212 (S.D. Ill. Sept. 6, 2013)).

The Eighth Circuit reasoned that "[n]either the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro*, 705 F.3d at 918). The Eighth Circuit further held:

> Here, the context of the calls indicates that they were initiated for
> the purpose of promoting Last Ounce of Courage….Although the

26

> campaign appeared to survey whether recipients had "traditional
> American values," [the producers of the movie] were "more
> concerned with getting viewers to see Last Ounce of Courage than
> gathering information about them."…. Since the calls were initiated
> and transmitted to the Golans in order to promote Last Ounce of
> Courage, they qualified as "telemarketing" even though the
> messages never referenced the film.

*Golan*, 788 F.3d at 820.

In *Flores v. Access Ins. Co.*, the defendant, an auto insurance company, sent the following text message to the plaintiff's cellular telephone: "Your Access Auto Insurance policy cancels 01/26/2015. To avoid cancellation, make a payment at [this website]. Reply STOP to Opt-out." No. 2:15-cv-02883-CAS(AGRx), 2017 U.S. Dist. LEXIS 36486, at *2 (C.D. Cal. Mar. 13, 2017). The plaintiff alleged that the defendant violated the TCPA by sending him a text message without his express written consent. *Id*. at *20. The defendant argued that it did not need written consent because its text message did not constitute telemarketing. *Id*. In rejecting the defendant's argument, the court sided with the plaintiff's contention:

> defendant's communications had two purposes: (1) to alert plaintiff
> to the expiration of his auto insurance policy; and (2) to encourage
> plaintiff to renew his policy. That is, the communications had both
> informational and telemarketing purposes because plaintiff was
> informed about the status of his policy and was encouraged to
> purchase services from defendant.

*Id*. at *21 (internal citation omitted). Since the defendant failed to obtain express written consent, the court concluded that the plaintiff had adequately stated a claim for violation of the TCPA.

In *Meyer v. Bebe Stores, Inc.*, the defendant sent the following text message to the plaintiff: "bebe: 'Get on the list! Reply YES to confirm opt-in. 10% OFF reg-price in-store/online. Restrictions apply. 2msg/mo, w/latest offers. Msg & data rates may apply.'" No. 14-cv-00267-YGR, 2015 U.S. Dist. LEXIS 12060, at *3 (N.D. Cal. Feb. 2, 2015). The plaintiff alleged that the defendant violated the TCPA because it did not have her express written consent to send her text

messages. *Id.* The defendant countered that its message was "merely an informational or administrative message," for which it only needed express consent. *Id.* at *11. The court agreed with the plaintiff, holding that the text message at issue was an impermissible dual purpose message that sought to encourage a future purchase. *Id.* The court was not persuaded by the fact that the message served a dual administrative function (opt-in), holding that express written consent was required because of the marketing component of the message (encouraging future purchases). *Id.* at *12.

Lastly, in *Toney v. Quality Res., Inc.*, the plaintiff provided her cellular telephone number to the defendant in connection with the purchase of children's shoes. 75 F. Supp. 3d 727, 731-32 (N.D. Ill. 2014). Subsequently, the defendant called the plaintiff's cellular telephone with an automated dialer to verify the plaintiff's address. *Id.* at 732. During that call, the defendant's agent tried to sell the plaintiff a membership in defendant's "Budget Savers" program. *Id.* The plaintiff filed suit under the TCPA, claiming that the defendant contacted her without her express written consent. *Id.* at 731. The defendant disputed plaintiff's characterization of the call, claiming that it was simply a "confirmation telephone call." *Id.* at 737. The court ultimately agreed with the plaintiff, holding that the call was a dual purpose call that it deemed a "sales call," because defendant, in addition to verifying plaintiff's information, attempted to sell her the "Budget Savers" program. *Id.* at 738.

Here, to the extent this Court concludes that Defendants calls were not purely telemarketing, the calls are at best dual-purpose solicitations that are actionable under the TCPA because Defendants failed to secure express written consent from Plaintiff and the Class members. Defendants contacted Plaintiff and the Class members to notify them that Patrowicz was transitioning his practice to a concierge model. Defendants were not required to and did not need

to use prerecorded voice messages to contact Plaintiff and the Class members; they opted to do so because it was efficient and cost-effective. And while Defendants now attempt to characterize their conduct as merely attempting to inform and educate, the internal communications discussed at length above show that the ultimate purpose of Defendants' calls was to promote and solicit the sale of their services. Accordingly, as discussed below, Defendants were required to obtain express <u>written</u> consent from Plaintiff and Class members before initiating their prerecorded voice calls.

### 3. *Defendants Failed to Secure Express Written Consent.*

"Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Keim v. ADF MidAtlantic, Ltd. Liab. Co.*, 328 F.R.D. 668, 681 (S.D. Fla. 2018) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)). A dual purpose call or one that constitutes telemarketing requires the "prior express written consent of the called party[.]" 47 C.F.R. §64.1200(a). "[P]rior express written consent" is defined as follows:

> (8) The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

29

*Snyder v. Icard Gift Card, LLC*, No. 0:15-CV-61718-WPD, 2016 U.S. Dist. LEXIS 191212, at *11-*12 (S.D. Fla. May 16, 2016) (quoting 47 C.F.R. §64.1200(f)(8)).  "Thus, under binding FCC regulations, 'prior express written consent' can be obtained only after providing the recipient with the required disclosures that they agree to receive automated telephone advertisements and that agreeing to receive such calls is not required to make a purchase." *Snyder*, 2016 U.S. Dist. LEXIS 191212, at *13 (quoting *In re Rules & Regs. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 8015 (July 10, 2015)).  "Simply obtaining some form of written express consent is insufficient to obtain the consent required by law to send automated text message advertisements." *Snyder*, 2016 U.S. Dist. LEXIS, at *13.

Defendants cannot meet their burden to demonstrate that they secured express written consent from Plaintiff and Class members.  Indeed, it is undisputed that Plaintiff and the Class members were never required to sign any type of form authorizing the transmission of prerecorded marketing communications to their telephones. Patrowicz Dep. at 69:19-24; 70:1-8. In ███

████████████████████████████████████████████████████████

████████████████████. Patrowicz Dep. at 73:5-17. ████████████

████████████████████████████████████████████████████████

████████████████████████ *See* Patrowicz Dep., Ex. 11 at PTRWCZ0000004 (emphasis added).

In sum, Defendants engaged in unsolicited marketing and failed to make any effort to obtain express written consent from Plaintiff and the Class members. But even if this Court is inclined to consider Defendants' arguments about the purpose of their calls, it remains that SignatureMD failed to secure any type of consent, and this Court should at a minimum enter summary judgment against SignatureMD.

### 4.      *SignatureMD Failed to Secure any Type of Consent.*

SignatureMD did not secure Plaintiff's or the Class members' telephones number directly from them; Patrowicz provided the numbers to SignatureMD as discussed above. Patrowicz Dep. at 58:2-10. Therefore, SignatureMD failed to secure any type of consent from Plaintiff and the Class members. *See Physicians Healthsource*, 950 F.3d at 968 ("The district court correctly noted, the 2006 FCC Order explains that '*the sender* must obtain the prior express invitation of permission from the consumer' before it sends an ad. 21 F.C.C. Rcd. at 3811 (emphasis added). The only logical understanding of this statement is that a fax's sender must procure prior express permission or invitation.'"). Moreover, as discussed above, TCPA consent does not transfer or extend from one entity (Patrowicz) to another entity (SignatureMD). *See Physicians Healthsource*, 950 F.3d at 967 ("it would seem odd if a company could solicit express prior permission to send fax advertisements, then transfer that permission to a completely different company who in turn may send advertisements with impunity until the consumer affirmatively terminates its previous permission. Indeed, such a practice could eviscerate the entire statutory scheme which is designed to protect consumers from receiving unwanted contact from unknown entities or individuals.").

This Court should therefore enter summary judgment in favor of Plaintiff and the Class members with respect to their claims against SignatureMD.

### 5.      *No Exception Applies to Defendants' Calls.*

As discussed at length above, the healthcare and emergency exceptions have no application to Defendants' calls and do not provide Defendants a basis for skirting the law. First, Defendants' prerecorded calls failed to comply with the FCC's requirements in the following ways: (1) the calls were not strictly limited to appointment and exam reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up,

31

prescription notifications, or home healthcare instructions; (2) the calls included telemarketing, solicitation, and advertising regarding Defendants' concierge services; and (3) the calls had no opt-out mechanism or method for Plaintiff and the Class members to request for the calls to stop. *See* 47 C.F.R. § 64.1200(a)(9)(iv); *see also* 2015 Order at ¶147.

Second, the emergency exception is similarly inapplicable because Defendants sent generic prerecorded message blasts to Plaintiff and the Class members about their concierge services. Defendants' calls (1) were not a reminder to confirm or refill a prescription order, schedule a prescription delivery, or confirm that a prescription is on its way; (2) were not necessary to protect the health or safety of Plaintiff, or any other recipient of the messages; and (3) did not contain or provide Plaintiff or the Class members with vital or time sensitive health and safety information. *See* 2016 Order ("purported emergency calls cannot be targeted to just any person. These calls must be about a bona fide emergency that is relevant to the called party."); 47 C.F.R. 64.1200(f)(4).

### 6.    Defendants' Violations Were Knowing and Willful.

The TCPA authorizes this Court to treble its damages award "if it finds that the defendant's violations of the law were 'willful[] and knowing[].'" *See Krakauer,* 925 F.3d at 661. "[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id*. (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). "The requirement of 'willful[] or knowing[]' conduct requires the violator to know he was performing the conduct that violates the statute." *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1255 (S.D. Fla. 2019). An increased damages award is appropriate to "to deter [defendants] from future violations and . . . give appropriate weight to the scope of the violations." *See id*. ("The court found both that the willful and knowing standard had

been satisfied and that an increased award was needed….There is no basis, either with regards to the legal standard or the facts, for disturbing this conclusion on appeal.").

In the case at hand, it is undisputed that Defendants knew they were sending prerecorded telemarketing calls to Plaintiff and the Class members without their express written consent. ███ ████████████████████████████████████████████████████ █████ Robinson Dep. at 21:24–22:11; 22:13-18, ███████████████████ ███████████████████████████████████████████████████████, Patrowicz Dep. at 60:2-6.

Defendants' conduct was therefore willful and knowing.  Defendants acted deliberately to contact Plaintiff and Class members with prerecorded advertisements, and with no regard for their privacy rights.  This is not an instance where someone was duped by an outside marketing vendor. Defendants knew precisely what they were doing, and SignatureMD has sent the same solicitations to countless other patients not represented in this case. Damages should be trebled to punish Defendants and deter them, particularly SignatureMD, from continuing to harass consumers.

## V.     CONCLUSION

Defendants are not entitled to summary judgment. None of the exceptions cited by Defendants apply and their purported compliance with HIPAA has no bearing on whether they violated the TCPA. Plaintiff has demonstrated that summary judgment should be entered in her and the Class members' favor as Defendants violated the TCPA by initiating prerecorded telemarketing calls without the requisite express written consent.

**WHEREFORE**, Plaintiff Kimberly Derossett, on behalf herself and the Class members, respectfully requests the entry of judgment against Defendants in the amount of $500 per call placed by Defendants, for a total of $2,957,500, and further treble damages for Defendants'

knowing and willful violations of the TCPA, and for such other relief as deem appropriate by the Court.

Date: January 28, 2022

Respectfully Submitted,

| | |
|---|---|
| Ignacio Hiraldo, Esq.<br>IJhiraldo@Hiraldolaw.com<br>**IJH Law**<br>1200 Brickell Ave.<br>Suite 1950<br>Miami, FL 33131<br>E: IJhiraldo@IJhlaw.com<br>T: 786-496-4469<br>*Pro Hac Vice* | Andrea R. Gold<br>agold@tzlegal.com<br>**TYCKO & ZAVAREEI LLP**<br>1828 L Street NW, Suite 1000<br>Washington, D.C. 20036<br>Phone: (202) 973-0900<br>Facsimile: (202) 973-0950 |
| **HIRALDO P.A.**<br><br>*/s/ Manuel S. Hiraldo*<br>Manuel S. Hiraldo, Esq.<br>Florida Bar No. 030380<br>401 E. Las Olas Blvd., Suite 1400<br>Fort Lauderdale, FL 33301<br>t. 954-400-4713<br>e. mhiraldo@hiraldolaw.com<br>*Pro Hac Vice* | |

*Attorneys for Plaintiff and the Proposed Class*

34